# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY LYNN HARKINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-412-SPS |

## OPINION AND ORDER

The claimant Tammy L. Harkins requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 26, 1974, and was thirty-seven years old at the time of the administrative hearing (Tr. 29, 133). She completed the tenth grade, and has worked as a daycare worker and casino housekeeper (Tr. 43, 185). The claimant alleged that she has been unable to work since May 5, 2010, due to being manic depressive, bipolar, forgetfulness, confusion, hypoglycemia, anxiety attacks, inability to function in crowds, and a need for her medications to be supervised (Tr. 184).

## Procedural History

On August 6, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 7, 2011 (Tr. 14-20). Upon review, the Appeals Council adopted the ALJ's RFC assessment but disagreed that she could return to her past relevant work, instead finding other work she could perform (Tr. 4-6). Thus, the Appeals Council's decision (including its adoption of the ALJ's RFC assessment) is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work as

defined in 20 C.F.R. § 416.967(c), and that due to psychologically-based factors, she had some limitations but could perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, and can adapt to a work situation, but could not relate to the public (Tr. 17). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a daycare worker (Tr. 20). The Appeals Council adopted the ALJ's findings and conclusions as to whether the claimant was disabled, but determined that the claimant could not return to her past relevant work as a daycare worker because it involved interaction with the public and was precluded by her RFC. They thus determined that the claimant was not disabled because there was work in the regional and national economy that she could perform, *i. e.*, document preparer, and further found she was not disabled under Medical Vocational Rule 203.26, a.k.a. "the Grids" (Tr. 5).

## Review

The claimant's sole contention of error is that the ALJ failed to properly assess her credibility. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of affective mood disorder and history of back injury (Tr. 23). As to her mental impairments, the claimant went to Choctaw Memorial Hospital on December 23, 2009, reporting she was on new psych meds and was not eating, drinking, or sleeping (Tr. 354). The claimant was hospitalized at Texoma Medical Center from April 23, 2010 through April 29, 2010, and again from May 11, 2010 through May 19, 2010, for her bipolar disorder (Tr. 270-273).

For the April hospitalization, she was admitted for safety and stabilization following decompensation, and had a good response to treatment, but was then re-admitted again twelve days later on May 11 for a predominantly manic episode requiring safety and stabilization again (Tr. 270-273). On admission in April, she was assessed a Global Assessment of Functioning score of 25, and discharged with a score of 40; in May she was again admitted with a GAF of 25, and discharged with a GAF of 35 (Tr. 277, 282). In between these two visits, the claimant went to Choctaw Memorial Hospital on May 4, 2010, with reports of chest pain (Tr. 348). On August 5, 2010, the claimant was admitted to Choctaw Memorial hospital for her bipolar disease with an overdose of medication and discharged (Tr. 319). She was noted to be lethargic and have incomprehensible speech at intervals (Tr. 333).

On August 21, 2010, the claimant was admitted to Carl Albert Community Mental Health Center (CAMHC), and discharged on August 27, 2010, for bipolar II disorder, most recent episode depressed (Tr. 436-438). On admission, she was assessed a GAF of 37.5, and discharged with a GAF of 50 (Tr. 436-438). The claimant reported she had run out of her medications, and had ruminating thoughts of broken relationships and had no job (Tr. 436). On discharge, she was free of suicidal and homicidal ideation, and was demonstrating healthier sleeping and eating patterns; her prognosis was guardedly optimistic depending on follow-up care and compliance with treatment recommendations (Tr. 438). On discharge, she stated that she was "100% better than when I first came in here" (Tr. 448).

State reviewing physician Cynthia Kampschaefer reviewing the medical evidence and on September 29, 2010, opined that the claimant had moderate limitations in the three areas of functional limitation, and no episodes of decompensation of extended duration (Tr. 467). She summarized the claimant's hospitalizations in 2010, and commented that the claimant was capable of performing simple tasks (Tr. 469). She also completed a Mental RFC Assessment, finding that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 471-472). She stated that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 473).

On September 18, 2010, the claimant again presented to Choctaw Memorial Hospital with an altered mental status, indicating she had been sleeping for three days and had a decreased appetite and slurred speech; she was discharged home to her mother (Tr. 486-488, 542-544). She reported to Choctaw Memorial for anxiety on February 20, 2011, and again on February 21 (Tr. 549-551, 556-559).

On February 22, 2011, the claimant was again admitted for inpatient treatment at CAMHC for a recent episode of depression related to her bipolar disorder, with intense anxiety and thoughts of suicide but no plans or intent; she believed she could harm herself if not admitted (Tr. 502). On admission, her GAF was 34 (Tr. 502). She was discharged when her suicidal ideation resolved, on March 1, 2011, with a GAF of 60 (Tr.

504). On discharge she was compliant with her medications, and the prognosis was again guardedly optimistic depending on follow up care and compliance (Tr. 504).

On May 15, 2011, the claimant went to Choctaw Memorial with renewed anxiety and panic attacks, and a reported inability to sleep (Tr. 561-563). She returned the next day with complaints of nausea, vomiting, anxiety, and not sleeping for three days (Tr. 567-568). She returned on May 20, 2011, requesting medication to help her sleep, but was referred to her primary care physician (Tr. 572-574). She returned again on July 27, 2011, with complaints of anxiety and nausea (Tr. 579-581).

At the administrative hearings, the claimant testified that she lives with her mother and does not drive because her medications make her dizzy and keep her from concentrating (Tr. 31). She further testified that she could not watch a thirty-minute television show because she loses concentration and cannot comprehend what is being said, and also needs to get up to move around frequently (Tr. 34-35). She stated that she sleeps about three or four hours a night, has intrusive thoughts even on her medications, and leaves her house about once a week if accompanied by her mother or daughter (Tr. 35-36). She said that the problems at her last job included frustration, anxiety attacks, inability to focus, and that she was missing three or four days a week at a time (Tr. 36-37).

In his written opinion, the ALJ summarized the claimant's hearing testimony, a Third Party Function Report completed by her mother, and much of the medical record. Upon summarizing the claimant's hearing testimony, he stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The ALJ gave substantial weight to Dr. Kampschaefer's opinion, finding it was supported by the evidence of record (Tr. 19). He disregarded the claimant's mother's report, because her testimony was "outweighed by other [unspecified] factors in making a credibility determination in this matter" (Tr. 19). He then stated that the claimant was not a "fully credible witness," that she had had a good response to medication and treatment, and her most recent GAF was 60 with a guardedly optimistic prognosis, leading him to conclude that the claimant's impairments could be "well-controlled with proper care and compliance with medications" (Tr. 20). He thus determined that the claimant was not disabled (Tr. 19-20).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the

regulations.'"[2] *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The Court finds that the ALJ failed to properly evaluate the claimant's credibility in accordance with the foregoing standards. First, the conclusory comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" indicates an improper approach to analyzing credibility, *i. e.*, the ALJ apparently formulated the claimant's RFC and then judged her credibility for consistency therewith, when he should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around. *See, e. g., Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). Second, despite mentioning Soc. Sec. Rul. 06-03p and Soc. Sec. R. 96-7p, and

---

[2] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

acknowledging that a credibility finding must be made, the ALJ wholly failed to perform the requisite analysis in his written opinion (Tr. 17-20).

Most importantly, the only apparent reason reasons given by the ALJ for finding that the claimant's subjective complaints were not credible was that the claimant's condition could potentially be well-controlled on her medications and she had *one* GAF of 60. This is hardly the balancing of all factors "in combination" prescribed in the regulations. *Huston v. Bowen*, 838 F.2d 1125, 1132-33 n.7 (10th Cir. 1988) ("When weighed in combination, such factors can shed light on the determination of credibility."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). This is bolstered by the fact that the ALJ wholly ignored the GAF scores in the record ranging from 25-50 (which was all other GAF scores in the record aside from the GAF of 60). "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. "Although the GAF rating may indicate problems that do not necessarily relate

to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. The ALJ should have considered whether the claimant's multiple substandard GAF scores were due to occupational factors. *See, e. g., Givens v. Astrue*, 251 Fed. Appx. 561, 567 n.4 (10th Cir. 2007) (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Instead, the ALJ wholly ignored evidence that did not support his conclusion, choosing instead to emphasize the one time claimant had a GAF of 60. *Taylor*, 739 F.2d at 1243 ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney*, 695 F.2d at 788.

The ALJ likewise failed to evaluate the Third Party Function report completed by the claimant's mother. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like the claimant's mother, who has not seen the claimant in her professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to

support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. The ALJ mentioned the Third Party Function Report, but discredited it by stating generally that lay witness testimony is often dependent upon the subjective complaints of the claimant, wholly failing to properly evaluate it in accordance with the factors set out in SSR 06-03p. The ALJ's task in evaluating credibility of lay witness testimony is precisely to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. *See Spicer v. Astrue*, 2010 WL 4176313, at *2 (M.D. Ala. Oct. 18, 2010) (finding that an ALJ's rejection of a lay witness statement because it was not a substitute for an appropriate medical opinion must *not* be based on a rationale that "applies with equal force to every 'lay statement.'"). Notably, while it may be appropriate for the ALJ to reject lay witness testimony that is based on the subjective complaints of a claimant when the ALJ has already determined that the claimant is not credible, *see, e.g., Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."), he is not entitled to reject *all* lay witness testimony with a blanket statement and without the proper analysis. Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, and the claimant's mother's

testimony in accordance with Soc. Sec. R. 06-03p, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**